UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA <br><br> v. <br><br> JACOB D. MILLER | Criminal No. 25-CR-30026-MGM |

GOVERNMENT'S SECOND SUPPLEMENTAL MEMORANDUM IN SUPPORTS OF ITS MOTION FOR PRETRIAL DETENTION OF DEFENDANT JACOB D. MILLER (D.12).

The United States of America, by and through its undersigned counsel ("the Government"), respectfully submits this second supplemental memorandum in support of its motion for the pretrial detention of defendant Jacob D. Miller ("the defendant" or "Miller").

1. Introduction

The Government's detention memorandum, D.13, and supporting affidavit of FBI Special Agent Derek Boucher, D.14, as well as the testimony of Special Agent Christopher Michalak on April 15, 2025, *see* D.21[1] and the Government's supplemental detention memorandum, D.23, established by clear and convincing evidence that "no condition or combination of conditions will reasonably assure . . . the safety of any other person and the community." 18 U.S.C. § 3142(e) and (f).

During oral argument on the detention hearing on April 16, 2025, *see* D.24,[2] United States

---

[1] This testimony (referred to herein as "CMT") has not yet been transcribed.

[2] The Government's account of the oral argument is based upon the memory of the undersigned Assistant United States Attorney, since the argument has not been transcribed.

Judge Katherine A. Robertson indicated that the Court was not considering the defendant's possession of explosives on April 8, 2025 since that conduct was not charged in the defendant's Criminal Complaint, D.4, and was not under investigation at the time the Government obtained and/or executed the search warrant for the defendant's residence.

However, on April 17, 2025, a Grand Jury indicted the defendant with two counts: Count One charged the defendant with possession of ammunition in violation of 18 U.S.C. § 922(g)(1) and Count Two charged the defendant with possession of explosives in violation of 18 U.S.C. § 842(i)(1). D.25. Thus, the Court should now consider the defendant's possession of explosives on April 8, 2025 as a factor weighing significantly toward the danger posed by the defendant if released.

In addition, as set forth in the accompanying Affidavit of FBI Special Agent Micayla Davidson dated April 22, 2025 (attached hereto as GX 31), during the execution of the search warrant of the defendant's residence on April 8, 2025, FBI agents seized a laptop in a room near the front door that various files of child sexual abuse material ("CSAM").

These two newly developed pieces of information further demonstrate that no condition or combination of conditions can reasonably assure the safety of the community.

2. <u>The Defendant's Possession Of Explosives On April 8, 2025 Weighs Heavily In Favor Of His Detention</u>

During the search of the defendant's residence on April 8, 2025, FBI agents located in the defendant's basement a FedEx box, plainly marked with a hazardous materials label, that contained one bottle of WANO black powder, and four bottles of GOEX black powder (of which one apparently had the plastic seal opened). CMT; GX 3.

The defendant's possession of these explosives on April 8, 2025 weighs heavily in favor

of his pretrial detention, particularly in light of his 2004 state conviction for possession of explosives, for which he served two and one-half years in the House of Correction. D.4, ¶ 6(b).

As the Materials Safety Data Sheet for GOEX black powder (attached hereto as GX 32) plainly cautions:

> Black powder is a deflagrating explosive. It is very sensitive to flame and spark and can also be ignited by friction and impact. **<u>When ignited unconfined, it burns with explosive violence and will explode if ignited under even slight confinement</u>**.
>
> \*\*\*   \*\*\*   \*\*\*
>
> Black powder is a Division 1.1 Explosive and **<u>detonation may cause severe physical injury, including death</u>**. All explosives are dangerous and must be handled carefully and used following approved safety procedures under the direction of competent, experienced persons in accordance with all applicable federal, state and local laws, regulation and ordinances.

*Id.*, at page 2 (emphasis added).

Similarly, the WANO black powder Safety Data Sheet (attached hereto as GX 33); (a) lists the recommended uses of its black powder as "blasting, fireworks, small arms, and cannons," (b) cautions that it should not be subject to "grinding/shock/friction," that there is an "explosion risk in case of fire," and that "[b]urning explosives may accelerate to a detonation at any time when subjected to confinement, shock, or other sufficient initiation source," and (c) warns that it is incompatible with "[v]olatile or corrosive chemicals, fuels, acids, and bases."

Here, the defendant stored these highly dangerous explosives in his basement, along with various radiological materials and hazardous chemicals, including fuels and acids. Consequently, the defendant's unregulated – and, indeed, illegal – possession of dangerous explosives weighs in favor of detention.

3.   The Defendant's Possession Of CSAM On April 8, 2025 Weighs Heavily In Favor Of His Detention

As set forth in the accompanying Affidavit of Special Agent Micayla Davidson dated April 22, 2025 (attached hereto as Government Exhibit 3), during the search of the defendant's residence on April 8, 2025, FBI agents located in a front room a laptop computer that contained a photograph of the defendant holding his own driver's license as well as various files of CSAM, including (for example) an image file of an approximately three to five year-old female performing oral sex on an adult male. *Id.*, page 3-4.

Notably, because the agents immediately ceased searching this laptop (and every other digital device) until they could obtain a search warrant for evidence of CSAM offenses, they have not yet determined the number of CSAM files that the defendant collected or the circumstances surrounding this collection. *Id.*, ¶ 10.

The defendant's possession of a laptop containing CSAM is particularly troubling in light of his prior 2004 conviction for possession of child pornography in Hampshire Superior Court, for which he received a lengthy seven-year term of probation. Like the defendant's possession of explosives, his possession of CSAM weighs heavily in favor of his pretrial detention.

4.   Conclusion

At oral argument during the detention hearing, Judge Robertson identified a central question to her bail determination: Could the court rely on the defendant to abide by his conditions of pretrial release? The answer is plain: No.

In 2004, the defendant was convicted of possessing child pornography and of possessing explosives – convictions that prohibited him from possessing firearms, ammunition, and explosives (as well as child pornography, which is per se illegal to possess by anyone).

4

In 2025, the FBI's search of his home yielded a stockpile of firearms and ammunition, a box of explosives, and a laptop that contained an as-yet undetermined amount of CSAM (in addition to hazardous radiological and chemical substances) – each of which poses a clear danger to the community.

The defendant clearly cannot conform his behavior to the law. Consequently, he must be detained.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By: */s/ Steven H. Breslow*
STEVEN H. BRESLOW
(NY2915247)
Assistant U.S. Attorney
300 State Street, Suite 230
Springfield, MA 01105
413-785-0330
steve.breslow@usdoj.gov

## Certificate of Service

I hereby certify that this document will be filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

By: */s/ Steven H. Breslow*
STEVEN H. BRESLOW
Assistant U.S. Attorney

Dated: April 22, 2025